

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**CHETANAND KUMAR SEWRAZ,**

      Plaintiff,

v.

                                           Civil Action No. **3:08CV90**

**NHON H. NGUYEN,** *et al.,*

      Defendants.

## MEMORANDUM OPINION

Chetanand Kumar Sewraz, a federal inmate proceeding *pro se* and *in forma pauperis*, filed this diversity action against his former attorney Nhon H. Nguyen and Nguyen's law firms ("Nguyen").[1] Nguyen moved to dismiss on the ground that Sewraz fails to state a claim upon which relief can be granted. Sewraz responded, and Nguyen replied. The issue is ripe for disposition. For the reasons that follow, Nguyen's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

## I. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the

---

[1] Sewraz originally named his estranged wife Mariea Gamble-Huynh as an additional defendant. This Court dismissed her as a party by Order entered on February 10, 2010. (Docket No. 34.)

plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle only applies to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte*

developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF ALLEGATIONS

Sewraz is a citizen of the Republic of Mauritius and a resident of Virginia. (Am. Compl. ¶ 5.) In 2005, Sewraz hired Nguyen, a Virginia attorney, to help Sewraz collect debts from Sewraz's estranged wife, Mariea Gamble-Huynh ("Gamble-Huynh"). (Am. Compl. ¶ 10.) Nguyen agreed to work on a contingency fee basis to recover the funds. (Am. Compl. ¶ 12.) Nguyen filed two warrants in debt against Gamble-Huynh in the General District Court for the County of Henrico (the "General District Court"), one in the amount of $12,500 and one in the amount of $15,000. (Am. Compl. ¶¶ 13–15.) "[I]n an attempt to get out of this debt, [Gamble-Huynh] threatened, charmed and worked her way out of the debt." (Am. Compl. ¶ 25.) She did so by targeting Nguyen. (Am. Compl. ¶ 25.) Gamble-Huynh "attempted to negotiate a trade [with Nguyen] whereby she would pursue claims against Mr. Sewraz's vehicle, unless [Sewraz] dropped [his] current suits." (Am. Compl. ¶ 27.) Sewraz instructed Nguyen not to negotiate with Gamble-Huynh unless the deal involved Sewraz's complete recovery. (Am. Compl. ¶ 28.)

### A.    Nguyen's Relationship with Gamble-Huynh

Nguyen then began an "extra-professional relationship" with Gamble-Huynh. (Am. Compl. ¶ 19.) This relationship included "lengthy chat[s]." (Am. Compl. ¶ 29; Am. Compl. ¶¶ 26–28.) During one of these chats, the details of which were revealed to Sewraz by Nguyen, Gamble-Huynh inquired about Nguyen's nationality. (Am. Compl. ¶¶ 29–30, 38.) Nguyen told Gamble-Huynh that he was American, but that both of his parents were from Vietnam. (Am.

3

Compl. ¶ 30.) Gamble-Huynh, a Vietnamese-American, found common ground with Nguyen's background and "they started talking about various aspects of Vietnamese culture." (Am. Compl. ¶ 32; Am. Compl. ¶ 31.) Gamble-Huynh invited Nguyen to a Vietnamese soup house in Richmond to discuss the legal matters between Gamble-Huynh and Sewraz. (Am. Compl. ¶ 33.) Nguyen declined, but the conversation continued. (Am. Compl. ¶ 35.) Gamble-Huynh asked Nguyen about his marital status; Nguyen told her that he was single. (Am. Compl. ¶ 36.) The two "talked at length about dating." (Am. Compl. ¶ 36.) Gamble-Huynh asked Nguyen "whether he had a 'cute butt,'" at which point the conversation ended. (Am. Compl. ¶ 37.)

Nguyen "appeared very taken with Ms. Gamble" and Nguyen asked Sewraz whether Sewraz would consider dropping his suit against Gamble-Huynh. (Am. Compl. ¶ 38.) Sewraz chided Nguyen for talking inappropriately with Gamble-Huynh. (Am. Compl. ¶ 39.) Sewraz told Nguyen that "no negotiations would be entered into unless full recovery was achieved." (Am. Compl. ¶ 39.) Nguyen apologized to Sewraz and promised to fight Gamble-Huynh "'for the sake of men everywhere.'" (Am. Compl. ¶ 40.)

Subsequently, Nguyen "became increasingly distant and less and less interested in winning." (Am. Compl. ¶ 41.) When this occurred, Sewraz asked Nguyen whether he had been engaging in more conversations with Gamble-Huynh. (Am. Compl. ¶ 42.) Nguyen "vigorously denied any such matters, overemphasizing that he was 'not interested in any way with her.'" (Am. Compl. ¶ 42.) Despite this, Sewraz alleges that "[o]n information and belief, Mr. Nguyen and Ms. Gamble did have further conversations, met and had sexual intercourse." (Am. Compl. ¶ 43.)

4

**B.    Nguyen Causes Sewraz Not to Appear on November 21, 2005**

Motivated by this relationship, Nguyen began to abandon Sewraz's case and started

working to Sewraz's detriment. (Am. Compl. ¶ 44.) This culminated in Nguyen telling Sewraz

that, based on Nguyen's phone conversation with Gamble-Huynh, Gamble-Huynh was

"definitely" not going to appear at a court hearing on November 21, 2005, which would result in

a default judgment in favor of Sewraz. (Am. Compl. ¶ 17; Am. Compl. ¶¶ 18–19.)  Nguyen told

Sewraz that this hearing was a mere "formality" at which "nothing important would be decided."

(Am. Compl. ¶ 23.) Relying on Nguyen's representations, Sewraz did not appear in court on that

day and instead relied on Nguyen to represent him. (Am. Compl. ¶¶ 19–20, 45.) Gamble-Huynh

did appear in court that day, however. (Am. Compl. ¶ 20.) Gamble-Huynh asked the court to set

a trial date for January 9, 2006, and Nguyen did not object. (Am. Compl. ¶¶ 20, 24.)

**C.    Nguyen Causes Sewraz to Reschedule His Vacation to Appear in Court on January 9, 2006, Which Was Merely a Hearing for Continuance**

Nguyen "was well aware that [January 9, 2006] would <u>not</u> be in the best interests of

[Sewraz]" because Sewraz and his "star witness" were planning on leaving the country for a visit

home from December 2005 until March 2006. (Am. Compl. ¶ 21.) Sewraz and his wife "had to

reschedule their plans, and suffer financially with regards to scheduled flights but more

importantly were forced to miss their mother's birthday, at the end of December." (Am. Compl.

¶ 24.) Sewraz appeared at the courthouse on January 9, 2006 as Nguyen instructed him to do.

(Am. Compl. ¶ 48.) Unbeknownst to Sewraz, Gamble-Huynh had filed a Motion for

Continuance four days earlier. (Am. Compl. ¶ 49.) Upon his arrival at the courthouse, Sewraz

learned that the hearing would be on the Motion for Continuance.  Nguyen neglected to tell

Sewraz that such a motion had been made and failed to provide Sewraz with a copy of the motion. (Am. Compl. ¶ 50.)

At the hearing, the court set a trial date for April 17, 2006, which conflicted with Sewraz's plans. (Am. Compl. ¶ 52.) When Nguyen failed to object to the date, Sewraz himself objected. (Am. Compl. ¶ 53.) The court asked Nguyen to voice any concerns; Nguyen stated that he had none. (Am. Compl. ¶ 54.)

### D.      Sewraz Is Arrested

On the same day that Sewraz appeared at the courthouse, January 9, 2006, he was arrested based on complaints filed by Gamble-Huynh. (Am. Compl. ¶ 56.) The charges were dismissed on March 7, 2006. (Am. Compl. ¶ 56.)

### E.      Nguyen Nonsuits Sewraz's Actions and Terminates the Legal Relationship

On February 6, 2006, without Sewraz's consent or prior knowledge, Nguyen nonsuited Sewraz's legal actions. (Am. Compl. ¶ 57.) Nguyen also drafted and executed a final representation letter, ending his attorney-client relationship with Sewraz. (Am. Compl. ¶ 58, Ex. 4.) Sewraz never received this letter or a copy of the motion for nonsuit because Nguyen sent them to Sewraz's home instead of to the jail where Sewraz was incarcerated. (Am. Compl. ¶¶ 59, 80.) Instead, he learned of these actions in June 2006 from "Mr. David Long of Ethical Investigations." (Am. Compl. ¶ 60.)

On January 11, 2007, while in jail, Sewraz filed a Motion to Reinstate the cases with the General District Court. (Am. Compl. ¶ 61, Ex. 1.) Eleven days later, the General District Court summarily denied the motion. (Am. Compl. ¶ 62, Ex. 2.) In February 2007, Sewraz wrote to Nguyen requesting all work product created for Sewraz's case. (Am. Compl. ¶ 63.)

6

**F.    Sewraz Files a Complaint with the Virginia State Bar**

In March 2007, Sewraz filed a complaint with the Virginia State Bar against Nguyen.[2] (Am. Compl. ¶ 64.) In his complaint, Sewraz alleged that Nguyen filed the nonsuit without contacting Sewraz because Nguyen was motivated by his feelings for Gamble-Huynh. (Am. Compl. ¶ 79.)

Nguyen responded to the bar complaint. (Am. Compl. ¶ 65, Ex. 3.) In his response, Nguyen did not address Sewraz's current allegations that Nguyen caused Sewraz to miss the November 21, 2005 hearing or that Nguyen failed to communicate to Sewraz the fact that defense counsel had moved for a continuance of the January 9, 2006 trial date. (Am. Compl. Ex. 3.) Nguyen, however, made four primary points.

First, Nguyen stated that sometime shortly after January 9, 2006, he learned that Sewraz "had been indicted on a multitude of state and federal charges ranging from the manufacturing of Ricin . . . to the possession of explosive devices." (Am. Compl. Ex. 3, at 2.) Nguyen stated that he unsuccessfully attempted to telephone Sewraz on multiple occasions. (Am. Compl. Ex. 3, at 2.) Nguyen learned that Sewraz "was temporarily being held at various nearby prisons waiting to be extradited to Florida on federal charges of attempting to blow up Ms. Gamble's and her mother's automobiles." (Am. Compl. Ex. 3, at 2.) Nguyen understood that "Sewraz's extradition was imminent and his custodial location was constantly changing." (Am. Compl. Ex. 3, at 2.) Sewraz claims that his incarceration was so well publicized and Nguyen's resources so

---

[2] Sewraz did not submit a copy of the bar complaint, but he did summarize it. (Am. Compl. ¶ 79.)

well connected that Nguyen must have been lying when he said he did not know where Sewraz was incarcerated.  (Am. Compl. ¶ 73–78, 80–84.)

Second, Nguyen explained that he sent the nonsuit and termination letter to Sewraz's home address because Nguyen did not know where Sewraz was incarcerated.  (Am. Compl. Ex. 3, at 3.)  Sewraz points out that the cover letter states, "[Y[ou are currently in Riverside jail." (Am. Compl. ¶ 84, Ex. 4.)

Third, Nguyen stated that he nonsuited the actions "so as to preserve Mr. Sewraz's right to bring [the] matters before the Court in the future, without prejudice."  (Am. Compl. Ex. 3, at 3.)  Nguyen averred that because Gamble-Huynh's default occurred on April 1, 2005, Sewraz had until April 2010 to file suit again.  (Am. Compl. Ex. 3, at 4 (*citing* Va. Code Ann. § 8.01-246.2).)

Finally, Nguyen denied Sewraz's allegations about Nguyen's improper relationship with Gamble-Huynh.  (Am. Compl. Ex. 3, at 3.)

## G.    Statement of Damages

Sewraz claims Nguyen caused Sewraz "to lose over $40,000 including interests and costs, and enormous mental anguish, loss of time, sleep, anxiety, as well as a feeling of betrayal by the Court."  (Am. Compl. ¶ 114.)  Sewraz also claims that he lost the value of the promissory notes. (Am. Compl. ¶ 115.)  Finally, Sewraz requests punitive damages "in excess of $1,000,000." (Am. Compl. 24.)

### III. SUMMARY OF CLAIMS

Sewraz alleges the following causes of action:

Claim One        Breach of Contract: Nguyen breached his contract with Sewraz to provide competent legal advice.[3]

Claim Two        Fraud: Nguyen fraudulently represented to Sewraz that Gamble-Huynh would not appear in the District Court on November 21, 2005.

Claim Three      Fraud: Nguyen fraudulently failed to inform Sewraz that a motion for continuance was filed on January 5, 2006.

Claim Four       Fraud: Nguyen fraudulently failed to inform Sewraz that a non-suit had been filed and the attorney-client relationship terminated.

Claim Five       Fraud: Nguyen fraudulently misrepresented to the Virginia State Bar that he attempted to contact Sewraz but was forced to send the final representation letter to Sewraz's home because he did not know where Sewraz was incarcerated.

Claim Six        Vicarious Liability: Nguyen's law firms are liable for all acts of misfeasance and nonfeasance by Nguyen.

Claim Seven      [Dismissed.][4]

Claim Eight      Intentional Infliction of Emotional Distress: Nguyen intentionally inflected emotional distress on Sewraz.

Claim Nine       Civil Rights Violations: Nguyen violated:

        (a)        42 U.S.C. § 1981 by preventing Sewraz from enforcing his loan contracts;

        (b)        42 U.S.C. § 1982 by negatively affecting Sewraz "in his dealings of his personal property . . . which actions were

---

[3] The breach of fiduciary duty mentioned in Sewraz's complaint (Am. Compl. ¶ 132) will not be considered, pursuant to the Report and Recommendation entered on September 15, 2009 (Docket No. 28, n.2) and adopted by this Court on February 10, 2010 (Docket No. 34).

[4] Claim Seven was dismissed pursuant to the Report and Recommendation entered on September 15, 2009 (Docket No. 28, n.2) and adopted by this Court on February 10, 2010 (Docket No. 34).

done with racial discrimination in mind, since Mr. Sewraz was Indian and not Vietnamese as Defendants" (Am. Compl. ¶ 180); and,

(c)   42 U.S.C. §§ 1985 and 1986 by conspiring to impede Sewraz's access to the Courts.

Claim Ten   Violation of Virginia Hate Crime Statute: Nguyen violated Section 8.01-42.1 of the Virginia Code by acting against Sewraz's property on account of his race.

## IV. ANALYSIS

## A.   Claim One: Nguyen's Alleged Breach of His Contractual Duties to Sewraz

In Claim One, Sewraz alleges that Nguyen breached the contract he had with Sewraz. (Am. Compl. 16.) An attorney's breach of the attorney-client contract gives rise to a legal malpractice claim in Virginia. *See Cox v. Geary*, 624 S.E.2d 16, 22 (Va. 2006). To properly state a cause for legal malpractice, Sewraz must establish four elements: (1) The existence of an attorney-client contract establishing a legal duty, (2) the lawyer's breach of that duty, (3) damages, and (4) causation between the breach and the damages. *See Shipman v. Kruck*, 593 S.E.2d 319, 322 (Va. 2004) (*citing Rutter v. Jones, Blechman, Woltz & Kelly*, 568 S.E.2d 693, 695 (Va. 2002)).

The parties agree that Sewraz and Nguyen entered into an attorney-client relationship. (Br. Supp. Mot. Dismiss 1–2.) Sewraz asserts that this relationship included "implied-in-fact and express contractual duties." (Am. Compl. ¶ 128.) These duties, Sewraz claims, "include the duty to provide competent legal services in a workmanlike, ethical and proficient manner and to safeguard [Sewraz's] interests in the Warrants in Debt." (Am. Compl. ¶ 129.)

Sewraz alleges that Nguyen breached these duties as follows:

[Defendants] breached their contractual duties to plaintiff by recklessly and knowingly failing to disclose to plaintiff, material facts which would have affected

10

plaintiff's decisions and by failing to provide plaintiff with competent legal advice and services in a workmanlike, ethical and proficient manner and by representing interests, i.e. Mariea Gamble's, directly adverse to those of plaintiff.

(Am. Compl. ¶ 130.) The Court understands Sewraz to allege three specific breaches of contract:

(1) Nguyen's failure to disclose material facts, (2) Nguyen's failure to provide Sewraz with

competent legal advice and services, and (3) Nguyen's conflict of interest via his relationship

with Gamble-Huynh.

### 1.   Nguyen's Alleged Failure to Disclose Material Facts

#### a.   Nguyen's Failure to Apprise Sewraz of the Fact that the January 9, 2006 Court Date Would Be a Hearing for a Continuance

Sewraz alleges that Nguyen failed to apprise Sewraz of the fact that the January 9, 2006

court date would be a hearing for a continuance instead of a hearing on the merits, a fact known

to Nguyen only four days before the hearing.  The result of this alleged nondisclosure is that

Sewraz appeared in court on January 9, 2006 unaware that it was a hearing on a motion for a

continuance instead of a hearing on the merits of the case.  Sewraz does not allege that these

events resulted in the damages of which he complains, *see supra* Part II.G.  Accordingly, this

allegation in Claim One will be DISMISSED for failure to state a claim.

#### b.   Nguyen's Nonsuit and Failure to Disclose the Nonsuit

Sewraz claims he was damaged when Nguyen nonsuited the underlying action and

subsequently failed to give him effective notice.  The only monetary damage Sewraz alleges that

stemmed from this claim is the purported loss of the value of the promissory notes, or

approximately $27,500.  (Am. Compl. ¶¶ 14–15.)

Nguyen moved to dismiss on the ground that the nonsuit and subsequent alleged

nondisclosure did not prejudice Sewraz in his pursuit of the value of the notes because the

nonsuit Nguyen requested and was granted on February 6, 2006 resulted in a dismissal without prejudice. (Br. Supp. Mot. Dismiss 5–6; Am. Compl. ¶ 57, Ex. 3, at 3.)  This means that Sewraz was free to file another suit so long as his claims were not barred by the statute of limitations. Presumably, at the time of the nonsuit, Sewraz had approximately four years of the five-year statute of limitations remaining to file suit. Va. Code Ann. §§ 8.01-380, 8.01-246;[5] (Am. Compl. Ex. 3, at 4). Sewraz failed to do so, despite being aware of this option,[6] choosing instead to attempt to "reinstate" the old suit and subsequently sue Nguyen. Nguyen, therefore, argues that Sewraz has not suffered any damages as a result of the nonsuit or subsequent alleged nondisclosure.

An attorney has the general implied authority to nonsuit a case so long as it does not prevent bringing another suit on the same merits. *Snyder-Falkinham v. Stockburger*, 457 S.E.2d 36, 40 (Va. 1995) (*citing Va. Concrete Co. v. Bd. of Supervisors*, 91 S.E.2d 415, 420 (Va. 1956)); *Engelhardt v. Bell & Howell Co.*, 299 F.2d 480, 483 (8th Cir. 1962); *Paxton v. Cobb*, 2 La. 137 (1831); 7A C.J.S. *Attorney & Client* § 240 (2010); C.R. McCorkle, Annotation, *Authority of Attorney to Dismiss or Otherwise Terminate Action*, 56 A.L.R.2d 1290 § 2(a). However, Nguyen does not direct the Court to authority supporting his theory that such authority absolves him of all liability from damages resulting from his actions.

---

[5] Section 8.01-380 of the Virginia Code provides the procedure for dismissing an action by nonsuit, which results in dismissal without prejudice. Section 8.01-246 of the Virginia Code requires actions for breach of a written contract be filed within a five-year statute of limitations.

[6] Nguyen made Sewraz aware of this fact in his response to Sewraz's bar complaint. (Am. Compl. Ex. 3, at 3.) At that time, there were approximately three years left on the statute of limitations.

Moreover, Nguyen does not direct the Court to authority supporting his theory that Sewraz's own negligence in not filing a new action constitutes a superseding cause that relieves Nguyen of liability. To the contrary, Virginia law states that "[a]n intervening act will never be deemed a superseding cause if the intervening act was set in motion by the initial tortfeasor's negligence." *Williams v. Joynes*, 677 S.E.2d 261, 264 (Va. 2009) (*citing Philip Morris Inc. v. Emerson*, 368 S.E.2d 268, 277 (Va. 1988); *see also Coleman v. Blankenship Oil Corp.*, 267 S.E.2d 143, 147 (Va. 1980); *Jefferson Hosp., Inc. v. Van Lear*, 41 S.E.2d 441, 444 (Va. 1947)).

This Court declines to determine whether Sewraz has sufficiently pleaded Nguyen's negligence at this time—or whether Sewraz was prejudiced by the nonsuit at all—because it appears that the total amount-in-controversy for Claim One does not exceed the statutory requirement of $75,000.[7] 28 U.S.C. § 1332(a). When the Court dismisses claims which render the amount in controversy below the statutory limit, the Court "enjoy[s] wide latitude in determining whether or not to retain jurisdiction." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (*citing Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993)). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (*citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

For this reason, Nguyen's Motion to Dismiss Claim One will be DENIED. Sewraz will be ORDERED to show cause why this Court should retain jurisdiction over Claim One.

---

[7] The punitive damages Sewraz requests in his Amended Complaint are not applicable to the contract claims because, absent an independent and willful tort, punitive damages are not available in such cause of action. *O'Connell v. Bean*, 556 S.E.2d 741, 743 (Va. 2002). For this reason, Sewraz's claim for punitive damages will be DISMISSED.

2.    Nguyen's Alleged Failure to Provide Sewraz with Competent Legal Advice

Sewraz alleges that Nguyen failed to provide him with competent legal advice when Nguyen advised Sewraz not to attend the November 21, 2005 court hearing. Sewraz claims that as a result of this advice, Sewraz did not show up, and thus he could not object to the trial date selected at the hearing. Sewraz claims he suffered damages when he and his wife "had to reschedule their plans, and suffer financially with regards to scheduled flights but more importantly were forced to miss their mother's birthday, at the end of December." (Am. Compl. ¶ 24.)

As an initial matter, the only financial damages Sewraz alleges relate to rescheduling plans and changing his plane ticket. Any other claims for emotional distress are not actionable in Virginia as Sewraz pleaded them. *See Timms v. Rosenblum*, 713 F. Supp. 948, 954 (E.D. Va. 1989) ("Absent an allegation and proof of outrageous conduct there is no warrant in Virginia law for allowing recovery of mental anguish damages in legal malpractice cases.") *aff'd*, No. 89-1485, 1990 WL 48915 (4th Cir. Apr. 4, 1990); *Baserva v. Remes*, No. 1:08-cv-997, 2009 WL 1392532, at *3 (E.D. Va. May 18, 2009) (citing cases for the proposition that "Virginia law does not allow damages for emotional distress resulting from legal malpractice").

Nguyen does not address the remaining damages that Sewraz maintains resulted from the alleged breach—Sewraz's costs of changing his travel arrangements. Nguyen does not direct this Court to any authority which suggests that these damages are not recoverable in a breach of contract claim. Instead, Nguyen argues that Sewraz has not alleged damages at all. (Br. Supp. Mot. Dismiss 7.) Accordingly, Nguyen's Motion to Dismiss will be DENIED on this claim.

Sewraz does not aver the amount of monetary damages he incurred by changing his travel plans. It seems unlikely that such costs exceeded the statutory limit of $75,000. *See supra* Part

14

IV.A.1.b. Sewraz will be ORDERED to show cause why this Court should retain jurisdiction over this claim.

### 3.      Nguyen's Relationship with Gamble-Huynh

Sewraz claims that Nguyen breached the contract by maintaining a conflict of interest[8] when he "represent[ed] interests, i.e. Mariea Gamble's, directly adverse to those of [Sewraz]." (Am. Compl. ¶ 130.) Nguyen does not address this issue, other than to say that no conflict of interest existed because no improper relationship ever developed between Nguyen and Gamble-Huynh.

This Court need not make such determination because it appears that whatever damages could have arisen from this alleged breach of contract amount to the value of the promissory notes, which does not exceed the statutory requirement of $75,000. *See supra* Part IV.A.1.b. For this reason, Nguyen's Motion to Dismiss will be DENIED on this claim. Sewraz will be ORDERED to show cause why this Court should retain jurisdiction over this claim.

### B.      Claims Two through Five:  Nguyen's Alleged Fraud

Sewraz couches Claims Two through Five under the headlines of "fraud." "In Virginia, a claim of fraud requires proof by clear and convincing evidence of all elements of fraud:  (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with the intent to mislead, (5) reliance by the party misled, and (6) damages resulting from that reliance." *White v. Potocska*, 589 F. Supp. 2d 631, 642 (E.D. Va. 2008) (*citing Bank of Montreal v. Signent Bank,*

---

[8] "[A] lawyer may not represent a client if the representation would involve a conflict of interest.  A conflict of interest is involved if there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person." Restatement (Third) of The Law Governing Lawyers § 121 (2000).

15

193 F.3d 818, 826 (4th Cir. 1999)). Sewraz "must plead with particularity the time and place the misrepresentations were made, the contents of those representations, the identity of the individual making the misrepresentation, what the individual making the misrepresentation gained from making it, and that the aggrieved party reasonably and detrimentally relied on those misrepresentations." *Scott v. GMAC Mortg., LLC*, No. 3:10cv24, 2010 WL 3340518, at *7 (W.D. Va. Aug. 25, 2010) (*citing Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); *Learning Works, Inc. v. Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987)); Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . .").

Fraud is a tort action. Although tort theories are applicable to legal malpractice actions, the appropriate cause of action is for a breach of contract. *VA Timberline, LLC v. Land Mgmt. Grp. Inc.*, 471 F. Supp. 2d 630, 634 (E.D. Va. 2006) (*citing Cox*, 624 S.E.2d at 22). "[I]n the absence of an independent, common law tort, other causes of action that allege the tortious breach of an attorney's contract for legal services are redundant and must be dismissed." *Atlas Partners II, LP v. Brumberg, Mackey & Wall, PLC*, No. 4:05CV00001, 2006 WL 42332, at *7 (W.D. Va. Jan. 6, 2006) (*citing O'Connell*, 556 S.E.2d at 743).

1.    **Claim Two: Nguyen's Alleged Fraudulent Representation that Gamble-Huynh Would Not Appear in Court on November 21, 2005**

Sewraz alleges that Nguyen fraudulently represented to him that Gamble-Huynh would not appear in court on November 21, 2005. (Am. Compl. 17.) Factually, this claim is identical to Sewraz's claim for breach of contract on the ground that Nguyen failed to provide competent legal advice, which the Court rejects above. Although such action "sound[s] in tort, [it] is an action for breach of contract." *Oleyar v. Kerr*, 225 S.E.2d 398, 400 (Va. 1976). Such action is

16

"redundant and must be dismissed." *Atlas Partners II*, 2006 WL 42332, at *7. Accordingly, Claim Two will be DISMISSED.

### 2.   Claim Three:  Nguyen's Alleged Fraudulent Failure to Inform Sewraz that a Motion for Continuance Was Filed

Sewraz alleges that Nguyen fraudulently failed to inform Sewraz that Gamble-Huynh filed a Motion for Continuance in January 2006. (Am. Compl. 17–18.) Factually, this claim is identical to Sewraz's claim for breach of contract on the ground that Nguyen failed to disclose material facts. "[A]lleged fraudulent acts of nonfeasance [for failure to disclose material facts] are simply redundant of breach of contract claims." *Atlas Partners II*, 2006 WL 42332, at *8 (*citing Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344 (Va. 1998); *Insteel Indus. Inc. v. Costanza Contracting Co., Inc.*, 276 F. Supp. 2d 479, 485 (E.D. Va. 2003)). Accordingly, Claim Three will be DISMISSED.

### 3.   Claim Four:  Nguyen's Alleged Fraudulent Failure to Inform Sewraz that a Nonsuit Was Filed and the Attorney-Client Relationship Terminated

Sewraz alleges that Nguyen fraudulently failed to inform Sewraz that Nguyen filed a nonsuit and subsequently terminated the attorney-client relationship with Sewraz. (Am. Compl. 18.) This claim is identical to Sewraz's claim for breach of contract on the same ground. Because the fraud claim arises solely from Sewraz's contractual relationship with Nguyen, it must be dismissed. *VA Timberline*, 471 F. Supp. 2d at 634. Accordingly, Claim Four will be DISMISSED.

### 4.   Claim Five:  Nguyen's Alleged Fraudulent Misrepresentation to the Virginia State Bar that Nguyen Attempted to Contact Sewraz while Sewraz Was in Jail

Sewraz alleges that Nguyen committed fraud on the Virginia State Bar when Nguyen averred to the Virginia State Bar that Nguyen had tried to contact Sewraz while Sewraz was in

jail. (Am. Compl. 19.) To make a prima facie case of fraud, Sewraz must plead, *inter alia*, that

he relied on this statement to his detriment. *White*, 589 F. Supp. 2d at 642 (*citing Bank of*

*Montreal*, 193 F.3d at 826). "[U]nder Virginia law, only the party who actually relied on the

alleged misrepresentation can maintain an action for actual fraud." *RBA Capital, LP v. Anonick*,

No. 3:08cv494, 2009 WL 960090, at *4 (E.D. Va. Apr. 8, 2009) (*citing Van Deusen v. Snead*,

441 S.E.2d 207, 209 (Va. 1994); *Thompson v. Bacon*, 425 S.E.2d 512, 514 (Va. 1993)). Sewraz

does not allege his own reliance on any misrepresentation by Nguyen to the Virginia State Bar.

*See id.* Accordingly, Claim Five will be DISMISSED.

## C.    Claim Six: Nguyen's Firm's Vicarious Liability

Claim Six relies on the vicarious liability of Nguyen's law firms for the actions of

Nguyen. (Am. Compl. 19–20.) Vicarious liability "is a theory of liability, not a separate cause of

action." *Rohrbaugh v. Kreidler*, No. 06-394, 2006 WL 2032640 (Va. Cir. July 20, 2006)

(explaining this concept in terms of respondeat superior, a form of vicarious liability). Nguyen

does not deny that he was working under the control of his law firms. *See Naccash v. Burger*,

290 S.E.2d 825, 832 (Va. 1982) (stating that of the four factors that establish the master-servant

relationship, "power of control" is "determinative"). Accordingly, Claim Six will be

DISMISSED as a separate cause of action, but retained as a possible theory of liability for the

remaining claims.

## D.    Claim Eight: Intentional Infliction of Emotional Distress

Sewraz claims that as a result of Nguyen's conduct, Sewraz experienced emotional

distress.

> Sewraz was forced to spend endless hours in mental agony, anxiety, causing him loss
> of sleep and pain also manifested itself in severe cramps to his hands and forearms.

He also considered suicide at several times thinking that if his own lawyer was against him, that the whole world was against him.

This severe distress resulted in frequent colds, upset stomach[,] sleepless nights, extreme pain in hands, and irregular bowl movements.

He also experienced loss of enjoyment of life, damage to his reputation[] and expenses to fight this injustice and atrocity.

(Am. Compl. ¶¶ 173–75.) Sewraz makes an additional blanket allegation that Nguyen caused Sewraz to suffer from "enormous mental anguish, loss of time, sleep, anxiety, as well as a feeling of betrayal by the Court." (Am. Compl. ¶ 114.)

"Because of problems inherent in proving a tort alleging injury to the mind or emotions in the absence of accompanying physical injury, the tort of intentional infliction of emotional distress is 'not favored' in the law." *Almy v. Grisham*, 639 S.E.2d 182, 187 (Va. 2007) (citations omitted). Because of this, "a plaintiff alleging a claim for intentional infliction of emotional distress must allege in her motion for judgment all facts necessary to establish the cause of action in order to withstand challenge on [a motion to dismiss]." *Id.* (citations omitted). A claim for intentional infliction of emotional distress requires Sewraz to allege facts that indicate that "1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008) (*citing Almy*, 639 S.E.2d at 186; *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974)). The Court need not analyze each element of the prima facie case for intentional infliction of emotional distress. If any element remains unsatisfied, the defendants' motion to dismiss will be granted. *See, e.g., Hickman v. Lab. Corp. of Am. Holdings, Inc.*, No. 1:05 CV 00049, 2005 WL 2475733, at *5 (W.D. Va. Oct. 6, 2005).

19

1.    **Nguyen's Allegedly Extreme Behavior**

The conduct must be "intolerable or outrageous such that it 'offends against the generally

accepted standards of decency and morality.'" *Ogunde v. Prison Health Servs., Inc.*, 645 S.E.2d

520, 526–27 (Va. 2007) (*citing Jordan v. Shands*, 500 S.E.2d 215, 219 (Va. 1998). If

"reasonable persons could view the conduct alleged, if proved, as being 'so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community,'" the claim may survive a

motion to dismiss. *Almy*, 639 S.E.2d at 187 (*quoting Russo v. White*, 400 S.E.2d 160, 162 (Va.

1991)).

In this case, Sewraz suggests that the following events are "outrageous or intolerable":[9]

(1) Nguyen failing to inform Sewraz about a motion for a continuance; (2) Nguyen filing a

nonsuit four years before the statute of limitations expired; and (3) Nguyen misinforming Sewraz

about whether the defendant would appear at a hearing. The conduct does not rise to that which

is atrocious or utterly intolerable in a civilized community. The Court finds that no reasonable

person could view the alleged conduct as being so outrageous or extreme as to exceed all

possible bounds of decency. *See, e.g., Hurst v. State Farm Mut. Auto. Ins. Co.*, No.

7:05CV00776, 2007 WL 951692, at *6 (W.D. Va. Mar. 23, 2007) (determining that alleged

fraudulent misrepresentations did not amount to outrageous conduct); *Goddard v. Protective Life

Corp.*, 82 F. Supp.2d 545, 558 (E.D. Va. 2000) ("Under Virginia law . . . 'mere professional

---

[9] In his enumerated claim for intentional infliction of emotional distress, Sewraz does not specifically mention which of Nguyen's actions give rise to this claim. Normally, such cursory allegations would require summary dismissal. *See Gedrich v. Fairfax Cnty. Dep't of Family Servs.*, 282 F. Supp.2d 439, 474 (E.D. Va. 2003). The Court, however, construes Sewraz's complaint liberally and will analyze Nguyen's actions about which Sewraz primarily complains.

negligence is not sufficiently extreme and outrageous to give rise to this unfavored tort'"

(*quoting Coppage v. Mann*, 906 F. Supp. 1025, 1049–50 (E.D. Va. 1995))). Put simply, none of

these three allegations in Sewraz's complaint, even if taken as true, would prompt an average

member of the community to exclaim, "'Outrageous!'" *Paroline v. Unisys Corp.*, 879 F.2d 100,

112 (4th Cir. 1989) (*quoting* Restatement (Second) of Torts § 46, cmt. (d)), *vacated in part on*

*other grounds by* 900 F.2d 27 (4th Cir. 1990).

###   2.    Sewraz's Allegedly Severe Distress

The distress a plaintiff experiences must be severe, debilitating, or cause "complete

disintegration of virtually every aspect of [the Plaintiff's] life." *Almy*, 639 S.E.2d at 188. It must

be "so severe that no reasonable person could be expected to endure it." *Id.* (*quoting Harris v.*

*Kreutzer*, 624 S.E.2d 24, 34 (Va. 2006)). The emotional distress that Sewraz alleges he

experienced is insufficient. *See Akl v. Dougherty*, No. 06-264, 2006 WL 5363178, at *2 (E.D.

Va. June 7, 2006) ("[T]he mere conclusory allegations made by Plaintiff that he 'suffered

extreme pain and emotional distress' do not sufficiently state a claim that his emotional distress

was severe enough under Virginia law."); *Savage v. Cnty. of Stafford*, No. 1:09-cv-1328, 2010

WL 1873222, at *10 (E.D. Va. May 4, 2010) (*citing Harris*, 624 S.E.2d at 34); *Harris*, 624

S.E.2d at 34 (dismissing an intentional infliction of emotional distress claim because the

"severity" element, which included nightmares, difficulty sleeping, extreme loss of self-esteem,

and depression, did not include a claim that no reasonable person could be expected to endure

such injuries). For these reasons, Sewraz has failed to state a claim upon which relief can be

granted. Accordingly, Claim Eight will be DISMISSED.

E.    **Claim Nine:  Violations of 42 U.S.C. §§ 1981, 1982, 1985, 1986**

1.    **Alleged Violations of §§ 1981 and 1982**

Sewraz invokes 42 U.S.C. §§ 1981 and 1982, which protect against alienage discrimination by private actors as well as the government.[10]  Sewraz claims Nguyen violated Sewraz's civil rights by prohibiting him from enforcing a contract, and by negatively affecting Sewraz "in his dealings of his personal property." (Am. Compl. ¶ 180.)  Sewraz alleges Nguyen did this because of Nguyen's racist tendencies.  The *only* fact Sewraz alleges to support these allegations is that Nguyen is Vietnamese-American and Sewraz is Indian. (Am. Compl. ¶ 180.) Such a conclusory statement is insufficient to state a claim.  *Francis v. Giacomelli*, 588 F.3d 186, 195 (4th Cir. 2009) (holding that the mere allegations that plaintiffs are African-American, defendants are white, and that defendants have never physically removed a white employee are conclusory and insufficient to state a claim under § 1981); *Manship v. Trodden*, No. 1:07cv772 (TSE/TCB), 2007 WL 3143559, at *6 (E.D. Va. Oct. 22, 2007) (requiring that a plaintiff "allege[] facts demonstrating that [the defendants] acted with a racial or specifically class-based 'invidiously discriminatory animus'").  Accordingly, these claims will be DISMISSED.

---

[10] Section 1981 of Title 42 of the United States Code is the Federal Anti-Discrimination Statute. *Herbert v. Harris Teeter, Inc.*, No. 1:09-cv-1111, 2010 WL 3909939, at *2 (E.D. Va. Oct. 5, 2010).  The statute "grants all persons within the jurisdiction of the United States 'the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *Hill v. John Foster Homes, Inc.*, No. 3:10-CV-209, 2010 WL 2696655, at *3 (E.D. Va. July 7, 2010) (omissions in original) (*quoting* 42 U.S.C. § 1981(a)).  It requires Sewraz to establish that he was the victim of intentional discrimination. *Herbert*, 2010 WL 3909939, at *2.  Section 1982 of Title 42 of the United States Code prohibits race discrimination in the purchase and sale of property. *Hill*, 2010 WL 2696655, at *3 (*citing* 42 U.S.C. § 1982).  "Courts consistently construe these two statutes together." *Id.* (*citing Saunders v. Gen. Servs. Corp.*, 659 F. Supp. 1042, 1063 (E.D. Va. 1987)).

2.      **Alleged violations of §§ 1985(2) and 1985(3)**

Sewraz also invokes 42 U.S.C. § 1985(2) and 1985(3).  It is clear that Sewraz means to

invoke the first portion of 1985(3) and the second clause of 1985(2).[11]  *Lexington Fire Dep't. v.*

*City of Lexington*, No. 6:08-cv-00019, 2009 WL 113152, at *4 (W.D. Va. Jan. 15, 2009).  Both

of these statutes require Sewraz to allege that Nguyen was motivated by racial or class-based

animus.[12]  *See Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971) (requiring discriminatory

animus for § 1985(3) claims); *Bloch v. Mountain Mission Sch.*, No. 86-1279, 1988 WL 45433, at

*4 (4th Cir. May 2, 1988) (calling the animus component of the second clause of § 1985(2) a

---

[11]  Sewraz means to invoke the first part of § 1985(3), which creates a private right of action against conspiring to deny enjoyment of equal protection of the laws.  The first portion, which contains two separate clauses, *see Kush v. Rutledge*, 460 U.S. 719, 725 n.8 (1983), reads:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . .

42 U.S.C. § 1985(3).  The remainder of § 1985(3) concerns disenfranchisement, which Sewraz does not allege.  Furthermore, Sewraz means to invoke the second clause of § 1983(2), which creates a private right of action against conspiring to prevent access to state courts.  The second clause reads:

> [I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2).  The first clause of 1985(2) concerns accessing federal courts, about which Sewraz does not complain.

[12]  Only the second clause of 1985(2), and not the first, requires such discriminatory intent.  *See Lexington Fire Dep't*, 2009 WL 113152, at *4.

"requirement"). For the same reasons that Sewraz fails to sufficiently allege racial animus with regards to his §§ 1981 and 1982 claims, he also fails to sufficiently allege racial animus here.

Furthermore, Sewraz merely avers that "[t]here was a definite meeting of the minds" between Nguyen and Gamble-Huynh. (Am. Compl. ¶ 183.) Such a conclusory statement does not suffice to state a claim. *Davis v. Hudgins*, 896 F. Supp. 561, 571 (E.D. Va. 1995) (calling the prima facie case under § 1985 a "high threshold"). Accordingly, Sewraz's §§ 1985(2) and 1985(3) claims will be DISMISSED.

### 3.   Alleged Violations of § 1986

Finally, Sewraz invokes 42 U.S.C. § 1986, which "provides a cause of action against any party with knowledge of" a § 1985 conspiracy, who fails to prevent the harm. *Davis*, 896 F. Supp. at 571. Because Sewraz's § 1985 action will be dismissed, so must his § 1986 action. *See Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985) ("A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985. Having affirmed the dismissal of plaintiff's § 1985 claim, we also affirm the dismissal of his § 1986 claim." (internal citation omitted)); *Davis*, 896 F. Supp. at 571 ("[F]ailure on the Section 1985 claim also defeats the Section 1986 claim.") (*quoting Burcher v. McCauley*, 871 F. Supp. 864, 869 n.4 (E.D. Va. 1994)). Accordingly, Sewraz's § 1986 claim will be DISMISSED.

For the reasons stated herein, Claim Nine will be DISMISSED.

### F.   Claim Ten: Alleged Violation of Va. Code Ann. § 8.01-42.1

Sewraz alleges that Nguyen violated Virginia Code § 8.01-42.1. This section of the Virginia Code provides a right of action for victims of intimidation, harassment, violence, or

vandalism, when such acts are motivated by racial animus.[13]  Sewraz has not alleged any facts

which suggest intimidation, harassment, violence, or vandalism.  Furthermore, for the reasons set

forth above, Sewraz has not alleged that Nguyen was motivated by racial animosity.  Therefore,

he has not stated a ground upon which relief can be granted.  Accordingly, Claim Ten will be

DISMISSED.

Nguyen's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

An appropriate Order will accompany this Memorandum Opinion.

Date: JAN 20 2011
Richmond, Virginia

/s/
Richard L. Williams
United States District Judge

---

[13]  Specifically, the relevant portion of the statute reads:

An action for injunctive relief or civil damages, or both, shall lie for any person who
is subjected to acts of (i) intimidation or harassment or (ii) violence directed against
his person; or (iii) vandalism directed against his real or personal property, where
such acts are motivated by racial, religious, or ethnic animosity.

Va. Code Ann. § 8.01-42.1(A).